SIXTH DIVISION
SEPTEMBER 17, 2010

No. 1-09-2774

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ELIZABETH ZDEB, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CH 16099 |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| an Illinois Corporation, | ) | Honorable |
| | ) | Mary K. Rochford, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff Elizabeth Zdeb, a policyholder, filed a declaratory judgment action in the circuit court of Cook County seeking a determination that defendant, Allstate Insurance Company (Allstate), was not entitled to a setoff on underinsured motorist coverage with monies paid to her for automobile medical payments coverage. Allstate moved for summary judgment pursuant to section 2-1005 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1005 (West 2008)), claiming that the provisions of her automobile insurance policy permitted the setoff. Plaintiff filed a response to Allstate's motion, and a cross-motion for summary judgment, claiming that a

setoff is allowed only when a policyholder obtains double recovery. The trial court found the policy unambiguously permitted the setoff, granted Allstate's motion for summary judgment, and denied plaintiff's cross-motion for summary judgment Plaintiff appeals and we affirm.

BACKGROUND

The underlying facts are not in dispute. On October 19, 2006, plaintiff was a pedestrian on a public sidewalk in Chicago when she was struck by an automobile driven by Kamil A. Scislowicz (Scislowicz). As a result, plaintiff sustained serious injuries, claiming damages in excess of $200,000.

Scislowicz's vehicle was insured by State Farm Insurance Company (State Farm) under an automobile insurance policy that provided liability coverage limits of $50,000 per person for bodily injury. Plaintiff settled with State Farm for the full policy limit of $50,000.

Plaintiff's policy with Allstate provided underinsured motorist (UIM) coverage with a limit of $100,000 for bodily injury and automobile medical payments (MP) coverage with a limit of $50,000. Plaintiff paid separate premium amounts for the UIM and MP coverages, as is normally done in an automobile insurance policy. Part 2 of the policy declaration explains "automobile medical payments coverage" as follows:

> "Allstate will pay to *** an insured person all reasonable expenses actually incurred for necessary medical treatment, medical services or medical products actually provided to the insured person. Hospital, medical, surgical, x-ray, dental, orthopedic and prosthetic devices, pharmaceuticals, eyeglasses, hearing aids, and professional nursing services *** are covered.

2

Payments will be made only when bodily injury is caused by an accident involving an auto or when [the insured] *** is struck as a pedestrian by a motor vehicle ***."

Part 6 of the policy declaration contains provisions concerning UIM coverage. That part contained a "Limits of Liability"section that included the following applicable setoff provision:

"Damages payable will be reduced by:

1. all amounts paid by or on behalf of the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury or property damage liability coverage of this or any other auto insurance policy.

2. all amounts payable under any workers' compensation law, disability benefits law, or any similar *automobile medical payments coverage.* (Emphasis added.)

Plaintiff submitted a UIM claim for her injuries to Allstate in the amount of $50,000, which equaled her UIM coverage limit minus the settlement amount she received from State Farm. Allstate had paid plaintiff $38,952.53 in MP coverage.

Allstate calculated plaintiff's UIM claim as follows: $100,000 would be setoff by the $50,000 settlement she received from State Farm and the $38,952.53 that Allstate had paid her in MP coverage, for a total setoff amount of $88,952.53. Allstate tendered the balance of $11,047.47 to plaintiff.

On April 23, 2009, plaintiff filed a declaratory judgment action against Allstate seeking a

3

declaration that she was entitled to $50,000, which represents the full UIM limit for bodily injury less the settlement amount she received from State Farm. On July 1, 2009, Allstate filed a motion for summary judgment claiming that it was entitled to setoff the MP paid to plaintiff in the amount of $38,952.53.

On August 14, plaintiff filed a response to Allstate's motion for summary judgment and a cross-motion for summary judgment. Plaintiff responded that summary judgment in favor of Allstate was improper because the MP coverage is a separate and distinct portion of plaintiff's insurance policy and claimed that a setoff is only allowed to prevent a double recovery.

After hearing arguments from both parties, the trial court issued a written memorandum and order finding that the policy provisions unambiguously allowed Allstate to setoff the UIM coverage by any settlement amount and payments made under the MP coverage.

Furthermore, the trial court found that the purpose of UIM coverage is to place a policyholder in the same position had the underinsured motorist carried liability insurance in the same amount as the policyholder. The trial court concluded that in allowing Allstate to set off the UIM coverage by Scislowicz's settlement amount and the amount paid to plaintiff under her MP coverage placed plaintiff in the same position had she recovered $100,000 liability coverage from Scislowicz. As a result, the trial court entered an order granting summary judgment in favor of Allstate and denied plaintiff's cross-motion for summary judgment.

This appeal followed.

ANALYSIS

On appeal, plaintiff claims that the trial court erred in granting summary judgment in

4

favor of Allstate and denying her cross-motion for summary judgment. Plaintiff argues that

Allstate violated public policy when it reduced its underinsured motorist coverage by amounts

paid for medical payments although the insurance policy unambiguously allowed for such a

reduction.

A trial court is permitted to grant summary judgment only "if the pleadings, depositions,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." 735

ILCS 5/2-1005(c) (West 2006). Construction of the terms of an insurance policy and whether the

policy comports with statutory requirements are questions of law properly decided on a motion

for summary judgment. See *Librizzi v. State Farm Fire & Casualty Co.*, 236 Ill. App. 3d 582,

587 (1992). The standard of review from the granting of summary judgment is *de novo*.

*Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009) ("We review appeals

from summary judgment rulings *de novo*").

When the language of an insurance policy is clear and unambiguous, a reviewing court

will give effect to those terms. *Grevas v. United States Fidelity & Guaranty Co.*, 152 Ill. 2d 407,

410 (1992); *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423-24 (1980). Here, the

underinsured motorist coverage in the insurance policy provided, in pertinent part, that

defendant's liability to plaintiff shall be reduced by the amount paid on behalf of the

underinsured driver and "any similar medical payments" paid on behalf of defendant. The trial

court found this language clear and unambiguous, and, on appeal, the parties do not contend that

any ambiguity exists in the language of the insurance policy. "Parties to a contract may agree to

any terms they choose unless their agreement is contrary to public policy." *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 559 (1992).

Underinsured motorist coverage is a statutory creation. Section 143a-2(4) of the Illinois Insurance Code (Code) requires automobile insurers to include underinsured-motorist coverage in policies that they issue. 215 ILCS 5/143a-2(4) (West 2004). Section 143a-2(4) of the Code defines an "underinsured motor vehicle" as one which has resulted in bodily injury or death to the insured, and "for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security" be maintained by the person responsible for the vehicle is less than the limits of underinsured coverage provided the insured under his policy at the time of the accident. 215 ILCS 5/143a-2(4) (West 2004). Section 143a-2(4) further provides for the insurer's limits of liability as follows:

"The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." 215 ILCS 5/143a-2(4) (West 2004).

In *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548 (1992), our supreme court examined the public policy behind the underinsured motorist statute. In *Sulser*, plaintiff's husband was killed in a motor vehicle accident involving an underinsured motorist. *Sulser*, 147 Ill. 2d at 551. Defendant insurance company sought to reduce the plaintiff's UIM coverage by workers' compensations benefits plaintiff received on behalf of the husband. *Sulser*, 147 Ill. 2d at

553. The supreme court construed the legislative intent for providing underinsured motorist coverage was "to place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as his [underinsured motorists coverage]." *Sulser*, 147 Ill. 2d at 558. The court further construed the public policy embodied in the underinsured motorist provision was "designed to offer insurance to 'fill the gap' between the claim and the torfeasor's insurance" and "not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy." *Sulser*, 147 Ill. 2d at 556. The supreme court concluded that an automobile insurance policy provision allowing a setoff of workers' compensation benefits from underinsured motorist coverage was not contrary as to public policy and concluded that the insurance company was entitled to the setoff. *Sulser*, 147 Ill. 2d at 559.

In *Adolphson v. Country Mutual Insurance Co.*, 187 Ill. App. 3d 718 (1989), the Third District of the Illinois Appellate Court examined whether medical payments could be a setoff from underinsured motorist coverage. In *Adolphson*, as in the case at bar, the plaintiff-insured filed a declaratory judgment action seeking a declaration that her insurer, Country Mutual Insurance Company (Country Mutual), was not entitled to setoff UIM coverage with MP coverage amounts paid to her. *Adolphson*, 187 Ill. App. 3d at 719. Plaintiff's automobile insurance policy included a provision that allowed a setoff of UIM coverage by any amounts paid by the underinsured driver and any MP amounts paid to her by Country Mutual. *Adolphson*, 187 Ill. App. 3d at 719.

The plaintiff's policy contained a $100,000 UIM coverage limit and an unspecified limit

in MP coverage. *Adolphson*, 187 Ill. App. 3d at 719. The plaintiff suffered injuries in an automobile accident and claimed damages in the amount of $113,200. The tortfeasor's insurer settled with the plaintiff for $30,000. Country Mutual paid plaintiff $13,111.43 in MP coverage and paid the $56,888.57 balance in UIM coverage. In total, plaintiff received her $100,000 UIM coverage limit minus the amount recovered by the tortfeasor's insurer ($30,000) and minus the amount the Country Mutual paid to plaintiff under its MP coverage ($13,111.43). *Adolphson*, 187 Ill. App. 3d at 719.

In interpreting the underinsured motorist statute, the *Adolphson* court found that the statute does not enumerate all deductions which may be claimed by an insurer, but rather sets a "maximum, or ceiling" the insurer must pay. *Adolphson*, 187 Ill. App. 3d at 721. In addition, the court found that "[n]othing in the statute prevents the insurer from reducing its liability by amounts paid under other coverages in the same policy." *Adolphson*, 187 Ill. App. 3d at 721. The court found the insurance policy at issue unambiguously allowed such a reduction in UIM coverage by amounts paid under MP coverage, and thus, concluded that the insurer was entitled to the setoff. *Adolphson*, 187 Ill. App. 3d at 721-22.

Similarly, in the case at bar, plaintiff purchased an automobile insurance policy through Allstate which contained a $100,000 UIM coverage limit and $50,000 in MP coverage. The insurance policy also contained a provision under UIM coverage that allowed Allstate a setoff of any MP payments paid to plaintiff. Plaintiff was injured in an automobile accident, and sustained damages in excess of her UIM coverage limit. The driver's insurance company settled with the plaintiff for the driver's liability coverage limit of $50,000. Plaintiff recovered the remaining

$50,000 difference when Allstate paid plaintiff $38,952.53 in MP coverage and the $11,047.47 balance.

As with the *Adolphson* court, we find nothing in the statute that prevents Allstate from reducing its liability by amounts paid under other coverages in the same policy since the policy authorizes the credits. In addition, under *Sulser*, Allstate's setoff provision is not contrary to any known public policy. The reduction did not prevent plaintiff from receiving the difference between the underinsured driver's insurance and the amount of UIM coverage provided in her policy. See *Sulser*, 147 Ill. 2d at 556. Accordingly, we find that the setoff provision in the Allstate policy was consistent with the underinsured motorist statute and the public policy behind the statute and, therefore, was valid.

Plaintiff relies on *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272 (1992), in support of her argument that allowing a setoff when there is no danger of double recovery violates public policy and that the payment of multiple premiums creates a reasonable expectation of multiple coverages in the insured.

*Hoglund* was consolidated with *Greenawalt v. State Farm Insurance Co.*, 210 Ill. App. 3d 543 (1991), as both cases involved similar facts. In each consolidated case, the plaintiff was injured in an automobile accident with a motorist who was insured while she was a passenger in a vehicle driven by a motorist who was not insured. *Hoglund*, 148 Ill. 2d at 274. Both drivers were at fault, and the plaintiff suffered injuries that exceeded the combined coverage limits of the insured driver and her uninsured motorist coverage. *Hoglund*, 148 Ill. 2d at 274-75. The plaintiff settled with the insured driver and received the insured driver's liability coverage limit of

9

$100,000. *Hoglund*, 148 Ill. 2d at 275. The plaintiff then sought to obtain the limit of the uninsured motorist coverage under her own automobile insurance policy of $100,000. *Hoglund*, 148 Ill. 2d at 274-75. Plaintiff's policy also contained a setoff provision stating that any amounts paid or payable to the insured "by or for any person or organization who is or may be held legally liable for the bodily injury to the insured." (Emphasis omitted.) *Hoglund*, 148 Ill. 2d at 275. The defendant insurance company claimed that the setoff for the uninsured motorist coverage of $100,000 by the $100,000 paid by the insured motorist, left nothing available. *Hoglund*, 148 Ill. 2d at 276.

The supreme court in *Hoglund* first considered that the public policy behind the uninsured motorist provision was to place the insured in "substantially the same position as if the wrongful uninsured driver had been minimally insured." *Hoglund*, 148 Ill. 2d at 277, citing *Ullman v. Wolverine Insurance Co.*, 48 Ill. 2d 1, 4 (1970) and *Glidden v. Farmers Automobile Insurance Ass'n*, 57 Ill. 2d 330, 335 (1974). The court found that the literal interpretation of each policy's setoff provision warranted the complete setoff. *Hoglund*, 148 Ill. 2d at 278. However, the court found that each setoff provision could not be read in isolation, but must be considered in conjunction with each plaintiff's reasonable expectation of receiving uninsured motorist coverage because she paid a premium for it, the public policy behind the uninsured motorist statute, the coverage intended by the insurance policy, and the facts of the case. *Hoglund*, 148 Ill. 2d at 279.

In viewing the setoff provisions in that way, the court found that each plaintiff reasonably expected to receive coverage for damages caused by an uninsured motorist, but the policies

allowed the insurance company a setoff of monies paid by the insured motorist for that driver's fault in the accident, which was unrelated to the fault of the uninsured motorist. *Hoglund*, 148 Ill. 2d at 279. The court also found that a literal interpretation frustrated the public policy behind the uninsured motorist statute because the plaintiffs would not be placed in the same position if the uninsured driver had liability coverage. *Hoglund*, 148 Ill. 2d at 279-80. The court reasoned that if the uninsured driver had been insured, plaintiff would receive compensation from both drivers' liability coverage. *Hoglund*, 148 Ill. 2d at 280. However, the literal interpretation allowed the insurance company to setoff the monies paid to plaintiff by the insured driver against the plaintiff's uninsured motorist coverage effectively nullified the uninsured motorist coverage. *Hoglund*, 148 Ill. 2d at 280. As a result, the court found that the setoff provision denied the plaintiff the "very insurance protection" for which she had paid premiums and thus created a latent ambiguity. *Hoglund*, 148 Ill. 2d at 280. The court construed the policy in favor of coverage to the insured and concluded that the insurance company was entitled to a setoff against the uninsured motorist coverage only to the extent necessary to prevent double recovery. *Hoglund*, 148 Ill. 2d at 280.

Based on the decision in *Hoglund*, plaintiff in the case at bar claims that Allstate is not entitled to a setoff because there is no danger of double recovery even if she received the limits of both her UIM coverage and MP coverage.

We agree with plaintiff that *Hoglund* is not limited to uninsured motorist cases. See *Banes v. Western States Insurance Co.*, 247 Ill. App. 3d 480, 483 (1993). However, we find that plaintiff's reliance on *Hoglund* is misplaced.

11

In *Hoglund*, the concern for double recovery arose because there was more than one tortfeasor in each accident, as the monies paid by one tortfeasor acted to reduce the recoverable damages from the remaining tortfeasor. See *Banes*, 247 Ill. App. 3d at 483 citing *Greenawalt*, 210 Ill. App. 3d at 547 and *Hoglund*, 148 Ill. 2d at 272. "Without such a reduction, a plaintiff could receive damages in excess of her injuries, resulting in double recovery." *Greenawalt*, 210 Ill. App. 3d at 547.

Plaintiff has not provided us any case authority where *Hoglund* has been applied to situations involving only one tortfeasor. Yet, several Illinois Appellate Court cases have found that *Hoglund* does not apply in situations involving a single tortfeasor. See, *e.g.*, *State Farm Mutual Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 615 (2006) ("reliance on *Hoglund* is misplaced. *** In the present case, there is only one tortfeasor"); *Banes*, 247 Ill. App. 3d at 484-85; *Darwish v. Nationwide Mutual Insurance Co.*, 246 Ill. App. 3d 903, 907-08 (1993); *Marroquin v. Auto-Owners Insurance Co.*, 245 Ill. App. 3d 406, 408 (1993); *Obenland v. Economy Fire & Casualty Co.*, 234 Ill. App. 3d 99, 110-11 (1992). In the case at bar, there is only one tortfeasor. In addition, there is no latent ambiguity in the plaintiff's policy as applied that requires us to construe coverage in favor of plaintiff. Accordingly, we find that *Hoglund* does not apply.

Plaintiff also has not provided us any case authority that would show a violation of public policy to allow a setoff where there is no double recovery by the plaintiff.[1]  Points raised but not

---

[1] Plaintiff claims that the appellate court in *Banes v. Western States Insurance Co.*, 247 Ill. App. 3d 480, 482 (1993), "stated that 'it would be a violation of public policy to allow a

argued or supported with authority in a party's brief are deemed waived. *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d. 559, 568 (2006) (by failing to offer supporting legal authority or "any reasoned argument," plaintiffs waived consideration of their argument); *People v. Ward*, 215 Ill. 2d 317, 332 (2005) ("point raised in a brief but not supported by citation to relevant authority *** is therefore forfeited"); *In re Marriage of Bates*, 212 Ill. 2d 489, 517 (2004) ("A reviewing court is entitled to have issues clearly defined with relevant authority cited"); *Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61,78 (1998) ("it is not necessary to decide this question since the defendant has waived the issue" by failing to offer case citation or other support as Supreme Court Rule 341 requires); 210 Ill. 2d R. 341(h)(7) (argument in appellate brief must be supported by citation to legal authority and factual record).

Plaintiff's argument that allowing setoffs where there is no double recovery violates public policy is not persuasive. The public policy considerations the supreme court made in *Hoglund* do not deviate from its determination of the public policy behind the underinsured motorist statute in *Sulser*. The supreme court in *Sulser* construed the public policy embodied in the underinsured motorist statute was to not only to offer insurance between an insured's claim and the tortfeasor's insurance, but also to prevent the insured from recovering "amounts from the insurer over and above the coverage provided by the underinsured motorist policy." *Sulser*, 147 Ill. 2d at 556. The supreme court in *Hoglund* reflected that latter concern by allowing a setoff to the extent necessary to prevent double recovery. If the plaintiffs in *Hoglund* suffered damages

---

setoff where there is no double recovery by the plaintiff.' " This is incorrect. The *Banes* court made this statement only in the context of discussing what the trial court found.

13

that did not amount to the full liability limit of both tortfeasors' policies, then a setoff was necessary to prevent plaintiffs from recovering amounts from the insurer over and above the coverage provided by their underinsured motorist policies.

Here, double recovery from two or more tortfeasors was not at issue. Moreover, the setoff provision in the Allstate policy is in accordance with the well-established public policy behind the underinsured motorist statute, which is to "fill the gap" between the amount recovered from the underinsured driver's insurance and the amount of coverage provided in the insured's policy. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 556 (1992). Plaintiff contracted for $100,000 in UIM coverage and was entitled to a total recovery of that amount. Plaintiff received $50,000 from State Farm and recovered the remaining $50,000 when Allstate paid plaintiff $38,952.53 in MP coverage and the $11,047.47 balance. As applied, the setoff provision here does not conflict with the underinsured motorist statute or the public policy embodied in that statute and was, therefore, valid.

Plaintiff also claims that she had a reasonable expectation of coverage under both UIM and MP coverages because she paid premiums on both. Again, plaintiff relies on *Hoglund*, where the supreme court considered in its analysis that each plaintiff paid a premium for the uninsured motorist coverage and found that a policyholder would be denied substantial economic value in return for the premiums that he or she paid if a setoff provision eliminated that coverage. *Hoglund*, 148 Ill. 2d at 279.

We find that argument not persuasive. In *Hoglund*, the supreme court found that the policyholders "believed that he was purchasing uninsured motorist protection," but the setoff

14

provision, as applied, nullified that coverage. *Hoglund*, 148 Ill. 2d at 278. As applied, the policyholders essentially paid for underinsured motorist coverage premiums without any benefit. In the case at a bar, however, the setoff provision did not nullify plaintiff's UIM coverage or MP coverage. Plaintiff received amounts from both coverages for which the total amount equaled the difference between the underinsured motorist's liability and her UIM coverage, which is the purpose of the UIM coverage that she purchased. See 215 ILCS 5/143a-2(4) (West 2004); *Sulser*, 147 Ill. 2d at 556.

Plaintiff further argues that she should be entitled to recover separately under UIM and MP coverages because she paid separate premiums for those coverages. Plaintiff relies on *Glidden v. Farmers Automobile Insurance Ass'n*, 57 Ill. 2d 330 (1974), for support.

In *Glidden*, the plaintiff was able to recover under the uninsured motorist provision of his three separate automobile insurance policies purchased from the same insurance company. *Glidden*, 57 Ill. 2d at 336. The policies contained the provision that if there is "other insurance" the insurance company was liable for only a *pro rata* portion of the damages from the total of all coverages available to the insured. *Glidden*, 57 Ill. 2d at 333-34.

The defendant insurance company argued that its obligation to the plaintiff under each of the three policies would be prorated to take into account monies paid to plaintiff under the other two policies. *Glidden*, 57 Ill. 2d at 334. Thus, the insurer argued that its obligation was $3,333.33 under each policy because each policy had a coverage limit of $10,000. *Glidden*, 57 Ill. 2d at 334. Plaintiff, on the other hand, argued that he should recover the full amount of uninsured motorist coverage under each policy for a total of $30,000. *Glidden*, 57 Ill. 2d at 332. The supreme court

agreed and held that an ambiguity existed with respect to the "other insurance" clause as applied to the multiple policies and resolved that ambiguity in favor of the plaintiff. *Glidden*, 57 Ill. 2d at 336.

In the case at bar, plaintiff observes in her appellate brief that the *Adolphson* court considered the same argument. In *Adolphson*, the court distinguished *Glidden* for the following reasons: (1) *Glidden* involved the stacking of multiple policies with the same coverage; (2) there existed an ambiguity in the extent of coverage and exclusions in the policy; and (3) the plaintiff paid separate premiums in each of his three policies as opposed to one policy.

Those same distinguishing factors in *Adolphson* court are present in the case at a bar. This case does not involve the stacking of multiple policies; the policy is clear and unambiguous; and plaintiff paid for one policy. Plaintiff further argues that *Adolphson* is not applicable because it was decided before *Hoglund*. However, plaintiff does not explain how *Hoglund* prevents us from considering the same distinguishing factors that the third district considered in *Adolphson*.

Moreover, separate premium payments for separate coverages in the same policy do not *per se* entitle an insured to recover under both coverages. *Costello v. Illinois Farmers Insurance Co.*, 263 Ill. App. 3d 1052, 1058 (1993). An automobile insurance policy is a contract between the policyholder and the insurance company, and the policyholder is bound by the policy's terms so long as those terms do not violate public policy. *Stryker v. State Farm Mutual Automobile Insurance Co.*, 74 Ill. 2d 507, 513 (1978).

In the case at bar, plaintiff contracted for $100,000 in UIM coverage, with a setoff provision that allowed Allstate to reduce that coverage by any amount received by the

16

underinsured driver and any MP monies that Allstate paid to plaintiff. Plaintiff was injured by an underinsured driver and settled with the driver's insurance company for $50,000. The Illinois underinsured motorist statute required Allstate to "fill the gap" between the amount the plaintiff recovered from the underinsured driver and the amount of coverage provided in her insurance policy, *i.e.*, $50,000. See 215 ILCS 5/143a-2(4) (West 2004); *Sulser*, 147 Ill. 2d at 556. Plaintiff recovered from Allstate $38,952.53 in MP coverage and $11,047.47 in UIM coverage for a total of $50,000. Under the terms of her insurance policy and statutory provisions, plaintiff received the full amount of UIM coverage to which she was entitled. Thus, we find no violation of public policy here. Therefore, we conclude that trial court properly granted summary judgment in favor of Allstate and denied plaintiff's cross-motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court of Cook County in granting Allstate's motion for summary judgment and denying plaintiff's cross-motion for summary judgment.

Affirmed.

J. GORDON and McBRIDE, JJ., concur.